73789, 73790. ROYAL CROWN COMPANIES, INC.
v. McMAHON; and vice versa.
(359 SE2d 379)

POPE, Judge.
Plaintiff McMahon was employed as president of Arby's, Inc., a wholly owned subsidiary of defendant Royal Crown Companies, Inc. (Royal Crown). Plaintiff did not have a written employment contract and his employment was terminable at the will of either party. In 1981 Royal Crown was a prime candidate for acquisition because of merger and takeover activities in the soft drink industry. To allay fears and uncertainty among top management, Royal Crown's board of directors voted to enter into agreements with all staff officers of Royal Crown and chief executive officers of subsidiary corporations,

including plaintiff, which contained clauses stipulating severance payment in the event of termination of employment or voluntary resignation after a change of control.

In late 1982, the parties to this action entered into a written agreement providing for the payment of one year's salary and other benefits in the event plaintiff resigned or was terminated within a specified period after a change in control of Royal Crown. The agreement was prepared by Royal Crown's in-house legal counsel and approved by its board of directors. The express purpose of the agreement was to protect the interests of the company and its shareholders by reinforcing and encouraging the continued attention and dedication of key management to their assigned duties without distraction by the potentially disturbing circumstances of the possibility of a change in corporate control. The agreement contained the following language: "In order to induce you to remain in your present employment and in consideration of your agreement to continue your employment subject to the terms and conditions hereof, this letter agreement sets forth the severance pay and benefits which the Company agrees will be provided to you in the event your employment is terminated pursuant to a "Change in Control of the Company" [as defined in and under the circumstances described in the remainder of the agreement]." Shortly after a change in control of the company and in accordance with the terms of the agreement, plaintiff voluntarily resigned. Royal Crown extended insurance benefits as outlined in the agreement but refused to give him severance pay in the amount of $332,165. Plaintiff sued for breach of the agreement and asked for attorney fees and expenses for Royal Crown's alleged bad faith and stubborn litigiousness. Royal Crown appeals (No. 73789) from the trial court's grant of summary judgment to plaintiff on the breach of contract claim. Plaintiff cross-appeals (No. 73790) from the trial court's grant of summary judgment to Royal Crown on the claim for attorney fees and expenses.

## Case No. 73789

1. In its first enumeration of error, Royal Crown argues the agreement should be unenforceable and void as a matter of public policy. Royal Crown seeks to distinguish the agreement under consideration from the typical severance agreement because it is a special type of contract which is commonly referred to as a "golden parachute." Generally speaking, a golden parachute is simply a severance agreement triggered by a change in corporate control. It provides a safe landing in the event an employee is forced to bail out after such a change. We are unpersuaded by Royal Crown's attempt, largely without legal support, to defeat this otherwise enforceable severance

agreement simply because it is contingent upon a change in corporate control. The term "golden parachute" is not by itself legally significant. *Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis.2d 349 (1) (377 NW2d 593) (1985). A severance contract by any other name would be just as enforceable.

Royal Crown argues that golden parachute agreements, in general, bear the taint of a conflict of interest in favor of the management beneficiaries to the detriment of the shareholders. We find no such conflict here. Plaintiff was not a member of the board of directors which approved this agreement. Moreover, the agreement was offered for the express purpose of protecting the shareholders by inducing the continued employment of plaintiff during a time of uncertainty when he might otherwise have been distracted by concerns for his own financial security to seek employment elsewhere.

Neither is the agreement void for failure of consideration. In the case at hand, plaintiff's employment was terminable at will and he was under no obligation to continue. The agreement was offered for the express purpose of inducing plaintiff to remain in his position during merger negotiations. Continued performance under a terminable-at-will contract furnishes sufficient consideration for the promise of additional severance pay. "We therefore reject any argument by the [employer] that any contract for severance pay is void as being without consideration." *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981), on later appeal, *Amax, Inc. v. Fletcher*, 166 Ga. App. 789 (305 SE2d 601) (1983).

We reject Royal Crown's argument that the court should apply a reasonableness test to the amount of the severance agreement. Royal Crown freely contracted with plaintiff for his yearly compensation and for the severance pay agreement. Now, Royal Crown does not wish to be bound by its earlier agreement. This court will not interfere with the parties' freedom to contract. This same response is made to Royal Crown's argument that the agreement is against public policy because plaintiff seeks to enforce it against the new owners of the company. The merger agreement expressly ratified all outstanding employment and severance agreements.

2. Royal Crown argues the agreement is also unenforceable as a penalty. A liquidated damages analysis is inapplicable to the case at hand since the severance agreement does not purport to be a stipulated sum for damages for a breach. See OCGA § 13-6-7. "If not liquidated damages, then what? As a reading of the contract suggests . . . the disputed provision simply describes the price to be paid for [plaintiff's] services." *ADP-Fin. Computer Svcs. v. First Nat. Bank of Cobb County*, 703 F2d 1261, 1264 (11th Cir. 1983). In this case, the severance agreement was the price, in addition to ongoing compensation, for plaintiff's continued performance which he was not otherwise

obligated to render. Termination of plaintiff's position could not possibly constitute a breach of the employment agreement since it was terminable at will. We hold this agreement to be an enforceable severance pay agreement. "Because under the contract [plaintiff's] right to severance pay was absolute . . . we find no merit in [Royal Crown's] additional argument that [plaintiff's] damages should have been reduced under the 'mitigation theory.'" *Atlanta Foot &c. Clinics v. Patton*, 176 Ga. App. 2, 3 (335 SE2d 141) (1985). See also *Salvatori Corp. v. Rubin*, 159 Ga. App. 369 (4) (283 SE2d 326) (1981).

3. We reject Royal Crown's argument that a genuine issue remains as to whether the plaintiff is entitled to payment because he did not faithfully perform under the contract. The severance agreement contained an exception for termination for cause. After change in corporate control, plaintiff continued in his position for several months. Although the new directors had ample opportunity to discharge plaintiff if he was not performing satisfactorily, there is no evidence that termination procedures were ever commenced. In response to plaintiff's motion for summary judgment, Royal Crown presented no facts upon which a jury could find the plaintiff was not entitled to enforce the terms of the severance pay agreement.

## Case No. 73790

4. We agree with plaintiff that issues of fact remain for the jury in regard to his claim for an award of attorney fees and expenses pursuant to OCGA § 13-6-11. If a breach of contract is poisoned by bad faith, expenses of litigation may be allowed. *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106 (2) (115 SE2d 852) (1960). The record shows Royal Crown promptly honored identical agreements with several other employees who exercised their rights to resign after the change in corporate control. According to testimony, part of the reason payment was not made to plaintiff was Royal Crown's belief that plaintiff was not entitled to those benefits because he had not faithfully performed his duties. However, one of the only two examples given of plaintiff's poor performance was a business decision made prior to the change in corporate control. As noted above, although the new directors had ample opportunity to discharge plaintiff if he was not performing satisfactorily, the record shows no termination procedures were ever commenced. These facts raise an issue for the jury to determine whether defendant's refusal to honor the severance agreement was made in bad faith.

We also find an issue of fact exists as to whether defendant has been stubbornly litigious. Where, as here, the court finds no genuine issue of dispute exists, a jury question remains as to whether the defenses asserted by defendant were made in good faith. See *Buffalo*

*Cab Co. v. Williams*, 126 Ga. App. 522 (191 SE2d 317) (1972).

5. Because a jury issue exists as to defendant's good or bad faith in asserting its defenses, we cannot find as a matter of law that this appeal was taken up for delay only. Therefore, plaintiff's motion for damages for frivolous appeal is denied.

*Judgment affirmed in Case No. 73789. Judgment reversed in Case No. 73790 and motion for damages denied. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JUNE 19, 1987 —
REHEARINGS DENIED JULY 6, 1987 —

*Stephen E. O'Day, Susan C. Kerr*, for appellant.
*David A. Rabin, Thomas T. Tate*, for appellee.