George **HANRAHAN** and **Reynaldo R. Francia**, on Behalf of Themselves and all Others Similarly Situated, Appellants,

v.

David **KRUIDENIER**; Barbara Mack; Ronald J. Peterson; Charles Edwards, Jr.; Richard Gilbert; Morley Cowles Ballantine; Luther L. Hill, Jr.; J. Robert Hudson; Kenneth MacDonald; Burke Marshall; John Crystal; and James L. Heskett, Appellees,

Elizabeth Ballantine, et al., Intervenors.

No. 90–205.

Supreme Court of Iowa.

July 17, 1991.

Robert B. Scism and Virginia C. Scism of Scalise, Scism, Sandre, Uhl, McConville, Miller & Holliday, Des Moines, and David H. Weinstein of Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for appellants.

Bennett A. Webster of Gamble, Riepe, Webster, Davis & Green, and Robert G. Allbee of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellees.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

This is a shareholder derivative action, in the guise of a class action, to challenge a number of actions taken by defendant corporate leadership in winding up a corporation. The trial court dismissed the claims. Defendants cross-appeal from the denial of the imposition of sanctions. We affirm on both appeals.

Defendants,[1] led by David Kruidenier, held management positions with the Des Moines Register and Tribune Company, a longtime Iowa newspaper publisher. In 1985 the company changed its name to R & T Liquidation, Inc., after its assets had

---

1. Defendants include the Des Moines Register & Tribune Co., various directors and officers, R & T Liquidation, Inc. (the company's name following its adoption of a liquidation plan), and trust- ees of a trust formed to conclude the corporate affairs. For simplicity, except where necessary, all will be referred to as defendants.

been sold. Plaintiffs, led by George Hanrahan,[2] are shareholders who complain about the way defendants sold and liquidated the company.

The rights of stockholders are well defined and, as to individual complaints, are unaffected by the effectiveness of other actions taken by corporation directors. Shareholders lose no standing to challenge individual actions of corporate directors merely because, on the whole, the directors' performance inured to the stockholders' considerable advantage. Nevertheless the directors point with considerable pride to the remarkable growth in stock value during the period under challenge. Market value of the stock had been about thirty-two dollars per share. At trial $291.50 per share had been distributed on liquidation, with a small amount remaining.

Plaintiffs of course ascribe this phenomenal growth to the stock's inherent value and fortuitous circumstances and not to adroit business conduct on the defendants' part. We mention this remarkable profit initially, not in response to any of plaintiffs' challenges but only to indicate that the defendants were not shown to be ineffective in concluding the affairs of the corporation. Additional facts can be recited more appropriately as they relate to individual challenges.

Because it is basic to all challenges, we should first state the business judgment rule, the standard by which the actions of directors are measured. The business judgment rule, universally applied as a part of corporate law, has long been codified in Iowa. It now appears in Iowa Code section 490.830 (1991).[3]

The purpose of the rule is to severely limit secondguessing of business decisions which have been made by those whom the corporation has chosen to make them. See *Cramer v. General Tel. & Elec. Corp.*, 582 F.2d 259, 274 (3d Cir.), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1978). Iowa Code section 490.-830 sets precise metes and bounds for judicial interference. Good faith is required (§ 490.830(1)(a)). In weighing the appropriateness of challenged business decisions the test is both objective (§ 490.830(1)(b)) and subjective (§ 490.830(1)(c)). When directors act in good faith in making a business decision, when the decision is reasonably prudent, and when the directors believe it to be in the corporate interest, there can be no liability.

The business judgment rule applies to all plaintiffs' challenges which do not allege self-dealing on the part of defendants. Where directors are involved with self-dealing the burden rests upon them to establish that the transaction was fair to the corporation. *Cookies Food Prods. v. Lakes Warehouse*, 430 N.W.2d 447, 453 (Iowa 1988).

I. In the months preceding the sale of the newspaper, defendants "donated" approximately $750,000 to the state historical museum and $50,000 to Iowa Public Television, an action which plaintiffs vigorously challenge as unauthorized. As a basic proposition investors in corporations organized for profit should not be called upon to share in the corporate management's personal philanthropic causes, no matter

**2.** Hanrahan is now deceased. Reynaldo R. Francia has been substituted as named plaintiff.

**3.** The same definition formerly appeared in Iowa Code § 496A.34 (1989). As it appears in the 1991 Code the statute states:
   **General standards for directors.**
   1. A director shall discharge that director's duties as director, including the director's duties as a member of a committee in conformity with all of the following:
   *a.* In good faith.
   *b.* With the care an ordinarily prudent person in a like position would exercise under similar circumstances.

*c.* In a manner the director reasonably believes to be in the best interests of the corporation.
   . . . .
   4. A director is not liable for any action taken as a director, or any failure to take any action, if the director performed the duties of the director's office in compliance with this section, or if, and to the extent that, liability for any such action or failure to act has been limited by the articles of incorporation pursuant to [Iowa Code] section 490.832.

how worthy. The law nevertheless recognizes that charitable contributions can be good business, and precision is not required in connecting up the contributions with a specific business purpose. Annotation, *Power of a Business Corporation to Donate to a Charitable or Similar Institution*, 39 A.L.R.2d 1192 (1955); *see also* Vol. 5 Iowa Practice, Hayes, *Business Organizations* § 242, at 279 (1985).

The $800,000 in contributions were furnished as consideration to settle tax litigation. We view the settlement to be particularly propitious to all involved, including the corporation. The corporation had brought suit against the State of Iowa seeking a refund of taxes paid on newsprint and ink. The United States Supreme Court held a similar Minnesota tax statute unconstitutional. *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). Refunds of taxes previously paid could scarcely be considered automatic however, because, following the Minneapolis Star and Tribune decision, the Iowa General Assembly passed a statute prohibiting retroactive refunds.

The trial court in the tax suit ruled the Iowa statutes unconstitutional and the statute prohibiting refunds invalid. It was far from a complete victory for the newspaper however. The trial court also held that a valuable tax exemption granted by the statute to newspapers was also invalid.

At this point, at the trial judge's suggestion, the parties explored settlement. Because the issues involved were complex and would likely carry the case to the United States Supreme Court, it was apparent that further litigation would involve substantial expense to the corporation with the ultimate outcome far from certain. On July 1, earlier on the same day the board and shareholders later voted to dissolve the company, the directors agreed to a settlement. The state would refund newsprint sales taxes in exchange for which the newspaper would make the challenged

charitable "donations." Plaintiffs criticize the fact that various terms of the settlement agreement were not in writing. The trial court found that an oral agreement was entered, however, and the evidence overwhelmingly supports the finding. Both sides complied with the agreement however, and it proved advantageous to the company. After making charitable gifts totaling $800,000 the company retained a net gain of $900,000.

The challenge rests on two contentions, a claimed lack of statutory authority and a claimed lack of legal obligation under the settlement. We reject both contentions.

■ Although plaintiffs argue otherwise, Iowa Code sections 496A.83 and 496A.84 (1989) [4] did not deprive the directors of authority to proceed with the donations. The statutes' provisions for business to cease and directors to proceed with "winding up" did not undermine the directors' authority to complete the settlement. The monetary donations were authorized before the dissolution vote.

The challenge, it is to be remembered, is to the actions of these defendants. We express no opinion on whether it was appropriate for state officials to negotiate or enter the settlement under the facts here.

The use of the term "donation" with regard to the $800,000 in payments is a misnomer. Ample consideration supported the payments. The settlement agreement was not a pure philanthropic gesture. The corporation did receive a return of $900,000, saved litigation expenses, and gained the assurance the corporation would not risk an unsuccessful appeal to the United States Supreme Court. The trial court was correct in rejecting plaintiffs' first challenge.

■ II. A donation of the company's artwork on December 24, 1984, presents a closer question. Valued at approximately $250,000, the artwork was given to the Des Moines Art Center and similar local institutions. Because the issue involves a duty of

---

**4.** Since repealed. For the present statutory scheme controlling corporation dissolution see

Iowa Code § 490.1401 (1991) et seq.

care only, the plaintiffs again have the burden of establishing defendants' breach. *Cookies Food Prods.*, 430 N.W.2d at 453.

The trial court found a rational business purpose for the gifts in the form of an income tax deduction which, the court stated, "appears to be more beneficial to the shareholders than selling art along with the other assets of the corporation where no additional consideration would ordinarily be given for them by the purchaser." The trial court thought a second factor supported the decision: keeping the art of the state's largest newspaper within the state. We find the gift well within the ambit of the business judgment rule and agree with the trial court's rejection of plaintiffs' challenge to the gift of the artwork.

III. Defendants implemented what they called a management retention program, which diverted $1,391,531 to officers and other employees while the company was being dissolved. Defendants thought this much in bonuses was necessary to maintain the quality of the paper while offers were being tendered by potential buyers. They cite various reasons to justify the plan: keeping the valuable editorial and corporate staffs during the sale period; maintaining profits; and preserving the value of the assets for the shareholders. General statutory authority existed to establish incentive plans for officers and employees under Iowa Code section 496A.4(15) (1989).

Several jurisdictions have upheld management retention programs, often called "golden parachutes." *International Ins. Co. v. Johns*, 874 F.2d 1447, 1460 (11th Cir.1989); *Buckhorn, Inc. v. Ropak Corp.*, 656 F.Supp. 209, 232 (S.D.Ohio 1987); *Royal Crown Co. v. McMahon*, 183 Ga.App. 543, 544–45, 359 S.E.2d 379, 381 (1987); *Worth v. Huntington Bancshares, Inc.*, 43 Ohio St.3d 192, 195–98, 540 N.E.2d 249, 254–55 (1989); *Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis.2d 349, 360,

377 N.W.2d 593, 599 (1985); *see also* 18B Am.Jur.2d *Corporations* § 1923, at 776–78 (1985). When the programs are shallow or half-hearted, so as to constitute a pretext or sham, the directors' acts are not shielded by the business judgment rule. *Auerbach v. Bennett*, 47 N.Y.2d 619, 634–35, 393 N.E.2d 994, 1002–03, 419 N.Y.S.2d 920, 929 (1979); *see also Kann v. Keystone Resources, Inc.*, 575 F.Supp. 1084, 1090 (W.D.Penn.1983) (to prove corporate officer breached fiduciary duty by voting on his own compensation, it must be established that that act amounted to corporate waste or fraud). There was no evidence of waste or fraud here.

■ The parties dispute who should bear the burden on this issue. The claim is premised solely on, neither a breach of care nor a breach of fiduciary duty, but rather a hybrid of the two. The bonus payments were approved by a disinterested compensation committee. At the same time, when high salaries are paid to corporate executives, an indicia of self-dealing appears to exist. In *Buckhorn, Inc.*, 656 F.Supp. at 232, the court held the burden rested with the directors to show the measures were reasonable. *But see International Ins. Co.*, 874 F.2d at 1460 (business judgment rule applies on issue whether a compensation plan violated a duty of loyalty).

The trial court, relying on *Cookies Food Products*, 430 N.W.2d at 453, determined that Kruidenier and the four interested defendant directors[5] had the burden to prove the reasonableness of the program. We think this placement of the burden was correct.

■ We emphatically agree with the trial court that the program was fair and reasonable. To be sure, substantial bonuses were paid. But the stakes were also very high; the company assets were eventually sold for about $340,000,000. The

---

5. The program was administered jointly by these interested directors (who were personally affected by the program) and by "outside" directors (who were not). The trial court placed no burden of proof on the outside directors on the ground they retained the protection of the business judgment rule. Because we hold the

interested directors easily carried the burden, we need not and do not explore the question of possible varying burdens. We do observe that it lends credence to the actions of the interested directors that their actions were under scrutiny by disinterested ones.

existence of sale negotiations was common knowledge among personnel, as it was indeed to all employees of the corporation. The loss of key personnel would in all likelihood have been a bargaining "chip" for potential buyers.

The challenged program was, under all the circumstances, entirely appropriate, and prudent. It was crucial to the interests of all shareholders that the operation of the newspaper be continued with full efficiency during the negotiation of the sale.

■ IV. Plaintiffs sought to prevent the trustees from indemnifying: (1) their own defense; (2) the defense of other officers and directors; and (3) the defense of shareholders who chose to intervene as defendants. The trial court ruled with the trustees as to the first and second of these groups, but sustained plaintiffs' challenge with respect to the intervening shareholders. Plaintiffs assign error in allowing the financing of any defense. Defendants cross-appeal to challenge the disallowance with respect to the intervening shareholders.

In asserting the trustees should not be indemnified for their defense, the plaintiffs allege there was no authority, either by statute or in the trust indenture, which allowed indemnification. Plaintiffs bolster their argument by citing principles of trust law. Plaintiffs first point to Iowa Code section 496A.4A(5) (1989) which provided that no indemnification shall be made by the corporation unless authorized by the board of directors, or by special legal counsel, or the shareholders. Because none of these authorizations were obtained, the plaintiffs assert there was no power to indemnify.

The trial court was not deterred by defendants' failure to authorize the payments in accordance with Iowa Code section 496A.4A(5). The corporation had been dissolved. In rejecting plaintiffs' objections, the trial court thought Iowa Code section 496A.4A(4) [6] was some authority for defendants' action.

The court rested its rejection mainly, however, on the basis of fairness. We agree with the trial court that in equity the expenses should be paid from the trust. In the first place payments were expressly authorized in the trust agreement. Plaintiffs complain the payments nevertheless constituted self-dealing, prohibited by a provision in Iowa's probate code. *See* Iowa Code §§ 633.155 and 633.160 (1991). *See Coster v. Crookham*, 468 N.W.2d 802, 810 (Iowa 1991) (fiduciary responsibility exists notwithstanding the fact that no appointment was made by a court). We however agree with the trial court that the self-dealing provision should not apply where the actions were authorized by the trust agreement and where the trustees were not acting in bad faith.

It would be patently unfair to require the trustees to finance their own defense when in essence they were performing the same duties as officers and directors of the former corporation. The fact that the lawsuit was filed after dissolution of the company should not keep the trustees, acting in a directory capacity, from indemnification for defending their actions.

Plaintiffs also claim that a trust law principle precludes the trustees from expending trust funds to defend other corporate officers. Trustees can however incur expenses to carry out the purpose of the trust. Restatement (Second) of Trusts § 186 comment d; § 188 comments a, b. Because the responsibility of the trustees was to wind up the affairs of the corporation, it was logical for the trust to finance the defenses which took place prior to dissolution. Any other result would be inequitable.

Plaintiffs did prevail with regard to some defense expenses. A judgment was entered against the trustees for payment of fees and expenses incurred on behalf of intervening shareholders. It reflected the actual cost of intervention and the expense incurred in response to plaintiffs' motion to dismiss the petitions of intervention. This is an issue upon which defendants cross-appeal.

---

**6.** For a new somewhat similar provision see Iowa Code § 490.851 (1991) et seq.

Defendants are unable to point out why the corporation should pay litigation expenses for the intervenors. There is no showing that intervention did, or was likely to, affect the outcome of the litigation.

Defendants' argument is premised mainly on principles of equity. The trust agreement declared it was to "be governed and construed in all respects as a trust." In light of the trust provision all shareholders are beneficiaries entitled to equal treatment. It would not be equal treatment if all shareholders were compelled to pay litigation expenses for those who, for reasons of their own, chose to intervene. We agree with the trial court's rejection of indemnification for defense expenses relating to the intervenors.

V. We find no abuse of discretion in the trial court's refusal to impose sanctions. *See Fields v. Iowa Dist. Court,* 468 N.W.2d 38, 39 (Iowa 1991). Although we have not discussed them, we have considered and now reject all other assignments and contentions. Costs on appeal are taxed eighty-five percent to plaintiffs and fifteen percent to defendants.

AFFIRMED ON BOTH APPEALS.