# IN THE COURT OF APPEALS OF IOWA

No. 15-1571
Filed December 6, 2017

**TIMOTHY TOPE, on behalf of Peripheral Solutions, Inc. and VendPrint, Inc.,**
　　Plaintiff-Appellee,

**vs.**

**KRIS GREINER, PERIPHERAL SOLUTIONS, INC., and VENDPRINT, INC.,**
　　Defendants-Appellants.
_____

　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


　　Defendants appeal the district court decision awarding damages, punitive

damages, and equitable relief to plaintiff in a shareholder derivative action.

**AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED.**



　　Sarah E. Crane and Stanley J. Thompson of Davis, Brown, Koehn, Shors

& Roberts, P.C., Des Moines, for appellants.

　　Harley C. Erbe of Erbe Law Firm, Des Moines, for appellee.



　　Heard by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Defendants appeal the district court decision awarding damages, punitive damages, and equitable relief to plaintiff in a shareholder derivative action. We find the nominal plaintiff does not have clean hands, and the corporations are not entitled to relief for the time period from October 1, 2010, to April 1, 2011. We reverse the district court's grant of damages on these grounds. We determine Kris Greiner is liable to the corporations for damages arising during the time period from April 1, 2011, until August 9, 2012. We conclude Greiner's decision to accept the settlement of a lawsuit is protected by the business judgment rule and also reverse the district court's award of damages on this ground. We determine the case must be remanded to the district court for a calculation of compensatory damages for the time period of April 1, 2011, until August 9, 2012, for each corporation. Because we are remanding on the matter of compensatory damages, we are also remanding on the issue of punitive damages. We affirm the award of equitable relief, as modified in this opinion. The district court decision is affirmed as modified in part, reversed in part, and remanded.

## I. Background Facts & Proceedings

Timothy Tope and Greiner incorporated Peripheral Solutions, Inc. (PSI), in 1994. Tope and Greiner each owned fifty percent of the stock and were the sole directors and officers in the corporation. PSI sold computer systems to automotive dealers. Tope, Greiner, and Charlton Hernandez incorporated VendPrint, Inc., in 1997. Each man owned one-third of the stock and was a director and officer in the company. VendPrint primarily sold computer systems

to universities and libraries. The businesses were operated together out of an office in Grimes. Greiner managed the businesses, including doing the bookkeeping, while Tope was the salesman.

At one point the companies had fifteen employees, but by 2010 there were four employees—Tope, Greiner, Danielle Nichols, and Brad Haley. The business relationship between Tope and Greiner deteriorated, with each blaming the other for the financial difficulties of the businesses. PSI did not generate much revenue, and VendPrint's sales had plateaued. Greiner took outside employment to supplement his income, although he continued to work part-time for PSI and VendPrint. Both men charged some personal expenses on their corporate charge accounts, increasing their financial problems.

On September 11, 2010, Tope purchased Hernandez's shares in VendPrint for one dollar, making him the majority shareholder in VendPrint. Tope did not inform Greiner of the sale, knowing it would cause further friction. Nichols testified Tope told her on September 30, 2010, "I'm going to try to get rid of Kris." Greiner discovered the sale of Hernandez's shares to Tope and Tope's desire to get rid of him that day. He incorporated a new business, Sirk, Inc., also known as SirkTech. Greiner called Nichols and Haley, stating he could no longer work with Tope and asked if they wanted to work with him, and both agreed. During the night, Greiner took the computer servers and some equipment from the office in Grimes and brought them to his home.[1]

---

[1] Greiner left a note for Tope stating, "Have a good life. We cannot work together any longer as you are not honest or trustworthy." Tope found the note on his office door.

Greiner testified he wrote another note, which stated, "F**k You Backstabber! See You in Court." Greiner stated he crumpled up this note and threw it away. Tope

On October 1, 2010, Greiner, Nichols, and Haley began operating PSI and VendPrint from Greiner's home. The companies continued to use the same 800 number and website. Greiner used some funds, $3089.55 from one account and $8950.64 from another account, for operating expenses and opened new bank accounts for the corporations. Greiner stated he took these actions because he wanted to keep Nichols and Haley employed and he felt responsibility to the companies' customers to keep the businesses going, although he did not want to work with Tope any longer. Tope took the remainder of the money from the bank accounts and closed the accounts. Tope forwarded the corporations' mail to his home and collected $40,000 payable to the corporations.

Tope demanded the return of the corporations' computer servers, which were returned to the Grimes office in November 2010. Tope stated he never turned the computers on or tried to use them. He never attempted to operate PSI or VendPrint. Tope remained in control of the corporate office in Grimes, including all of the equipment remaining in the office, until December 31, 2010, when Greiner terminated the lease. Tope was told to take what he wanted from the office, but he left several items, which Greiner then placed in storage.

In April 2011, Greiner began operating the business of PSI and VendPrint through his corporation, SirkTech. SirkTech used the 800 number and website associated with PSI and VendPrint. SirkTech had about the same amount of business as PSI and VendPrint had in the past and had many of the same customers. Greiner testified SirkTech was not very profitable. Nichols also

---

testified he found the note, wadded up into a ball, on Greiner's desk. Because it does not appear this note was intended to be delivered, we conclude it is irrelevant to our discussion.

testified the business was about the same as it had been in the past, and she stated PSI and VendPrint did not make much money. SirkTech operates from an office in Des Moines.

In the past, PSI had obtained a judgment against a former employee, Shaun Felderman, for $28,690.70, plus attorney fees and interest. During settlement negotiations, Greiner's attorney stated, "There is also a judgment PSI holds against Shaun Felderman as an asset. It is estimated to be valued at approximately $125,000." On July 3, 2012, Greiner, on behalf of PSI, settled the case for $15,000. Of this amount, $14,000 was used to pay attorney fees and $1000 went to PSI. Greiner testified the settlement was not only as to the amount of the judgment but also as to the amount of attorney fees.

PSI and VendPrint were administratively dissolved by the Iowa Secretary of State on August 9, 2012. Neither Greiner nor Tope took any steps to revive the corporations.

On October 1, 2012, Tope, on behalf of PSI and VendPrint, brought a shareholder derivative suit, claiming Greiner breached his duties as a director and acted against the interest of the corporations.[2] Tope sought damages, punitive damages, and injunctive relief. Greiner brought counterclaims against Tope for conversion and tortious interference with prospective business advantage.

A trial was held on October 21 and 22, 2014. Tope testified he was only seeking damages on behalf of PSI and VendPrint, not for himself individually. He

---

[2] Tope also raised individual claims against Greiner for the conversion of certain assets but later dismissed these claims, stating he was only seeking damages on behalf of the corporations.

testified Greiner did not do enough to promote the business and claimed revenue should have been higher. He also claimed the expenses of the companies were too high, and should only have been $115,000 per year. Tope also took issue with the Felderman settlement. Greiner testified he believed he was acting in the best interests of the companies. He stated he wanted to keep the employees working and to service the companies' customers.

The district court filed its ruling on April 4, 2015.[3] The court entered judgment against Greiner for $682,223.20 in compensatory damages and $275,365.34 in punitive damages, for a total judgment of $975,588.54 in favor of PSI and VendPrint. The award did not distinguish between the amount awarded to PSI and the amount awarded to VendPrint. The court also awarded PSI and VendPrint equitable relief, requiring Greiner to provide the companies with certain information and to cease using the 800 number and website.

Greiner filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2).[4] Greiner claimed the district court should have found Tope was not entitled to relief under the doctrine of clean hands. He also stated the court had improperly calculated compensatory damages, punitive damages were not appropriate, and

---

[3] The district court's twenty-one page ruling is identical to Tope's proposed ruling, except the court reduced the amount of compensatory and punitive damages awarded to PSI and VendPrint. The customary deference we give to district court rulings is not applied in this circumstance. *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002). When the district court has adopted one party's proposed ruling, "we must scrutinize the record more carefully when conducting our appellate review." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010); *see also Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 97 (Iowa 2011) (noting record should be considered more closely and carefully).

[4] Tope also filed a rule 1.904(2) motion. The court could not consider it, however, because it was untimely. Additionally, Tope filed the motion pro se, but a pro se litigant may not represent a corporation. *See Hawkeye Bank & Trust v. Baugh*, 463 N.W.2d 22, 25 (Iowa 1990).

the equitable relief was excessive and confusing. The court determined the clean hands doctrine did not apply because Tope's purchase of Hernandez's shares for one dollar did not relate to Greiner's misconduct. The court denied Greiner's rule 1.904(2) motion. He now appeals.

## II.    Standard of Review

Our review of decisions in shareholder derivative suits is de novo. *Cookies Food Prod., Inc., v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 448 (Iowa 1988). We "examine the entire record and adjudicate anew the rights on the issues properly presented." *Weltzin v. Nail*, 618 N.W.2d 293, 296 (Iowa 2000) (citation omitted). Weight may be given to the court's factual findings, but we are not bound by those findings. *Id.*

## III.    Liability

"A derivative lawsuit is unique in that the shareholders allege the company's directors have directly harmed it by their acts and omissions such that the company has suffered a loss." *Id.* at 295. In a shareholder derivative action, the shareholders of a corporation indirectly assert their rights by asserting the rights of the company. *Id.* The purpose of such an action is to redress the company's loss. *Cookies*, 430 N.W.2d at 455.

A director of a corporation has a duty to act "[i]n good faith," and "[i]n a manner the director reasonably believes to be in the best interests of the corporation." Iowa Code § 490.830(1) (2011). A director is not liable to a corporation unless the party asserting liability establishes the director did not act in good faith and acted in a manner "the director did not reasonably believe to be

in the best interests of the corporation." *Id.* § 490.831(1)(b). A director owes a corporation "complete loyalty, honesty, and good faith." *Rowen v. Le Mars Mut. Ins. Co.*, 282 N.W.2d 639, 649 (Iowa 1979).

A party seeking money damages from a director must also show the corporation suffered harm and the harm was proximately caused by the director's conduct. Iowa Code § 490.831(2)(a). A party seeking equitable remedies must show the remedies are appropriate under the circumstances. *Id.* § 490.831(2)(c).

In addition, an officer of a corporation must act (1) "[i]n good faith," (2) "[w]ith the care that a person in a like position would reasonably exercise under similar circumstances," and (3) "[i]n a manner the officer reasonably believes to be in the best interests of the corporation." *Id.* § 490.842(1). An officer may be liable to a corporation under the principles found in section 490.831. *Id.* § 490.842(3).

On our de novo review of the record, we determine Tope made three separate claims of misfeasance: (1) Greiner's action of moving the operations of PSI and VendPrint to his home; (2) Greiner's decision to operate the business formerly done by PSI and VendPrint through his own corporation, SirkTech; and (3) Greiner's settlement of the Felderman judgment for less than Tope believed it was worth. We will discuss each of these three incidents separately.

**A.** Concerning Greiner's action of moving the operations of PSI and VendPrint to his home, beginning October 1, 2010, we first consider the clean hands maxim. Greiner claims Tope is not entitled to seek relief on behalf of the corporations under the clean hands doctrine. *See Ellwood v. Mid States*

*Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987) (noting the doctrine of clean hands may be applied in actions brought in equity). "[E]quity requires that a shareholder derivative action cannot be maintained if the nominal plaintiff has unclean hands in connection with the transactions which are the bases for the litigation or has participated or acquiesced in, or benefited from the conduct of which he now complains." *Forkin v. Cole*, 548 N.E.2d 795, 805 (Ill. App. Ct. 1989).

> The Iowa Supreme Court has stated the doctrine of clean hands,
>
> expresses the principle that where a party comes into equity for relief he or she must show that his or her conduct has been fair, equitable, and honest as to the particular controversy in issue. A complainant will not be permitted to take advantage of his or her own wrong or claim the benefit of his or her own fraud or that of his or her privies.

*Opperman v. M. & I. Dehy, Inc.*, 644 N.W.2d 1, 6 (Iowa 2002) (quoting 27A Am.Jur.2d *Equity* § 126, at 605 (1996)). Additionally,

> whenever a party who seeks to set the judicial machinery in motion and obtain some equitable remedy has violated conscience or good faith, or another equitable principle in prior conduct with reference to the subject in issue, the doors of equity will be shut, notwithstanding the defendant's conduct has been such that in the absence of circumstances supporting the application of the maxim, equity might have awarded relief.

*Id.*

We first note there is little evidence the corporations were harmed when Greiner moved the base of operations from the office in Grimes to his home.[5] Nichols testified the corporations continued on as they had done before, although from a different location. The computers, equipment, 800 number, and website

---

[5] While there may have been harm to Tope, the sole issue in this shareholder derivative action is whether there was harm to the corporations.

belonged to the corporations, and the corporations continued using these items. The profits and losses of the corporations remained with the corporations.

During this time, Tope took money from the corporations' bank accounts then closed those accounts. He forwarded the corporations' mail to his house where it was not accessible for the operations of the businesses. In addition, Tope collected $40,000, which was meant for PSI and VendPrint, using it to compensate himself, pay legal fees, and purchase office supplies. We find Tope's actions arise out of the same set of circumstances and during the same time period as his complaint about Greiner on this issue. *See id.* (noting the clean hands doctrine may apply based on a party's "conduct with reference to the subject in issue"). Because the nominal plaintiff, Tope, does not have clean hands, we determine the corporations are not entitled to relief for the time period from October 1, 2010, when Greiner moved the business, until April 1, 2011, when Greiner started operating the businesses through SirkTech.[6] *See Forkin*, 548 N.E.2d at 805.

Based on our decision concerning clean hands, we eliminate the district court's award of damages for (1) $147,785.60, which the court designated as accounts receivable;[7] (2) $3089.55 Greiner removed from a PSI bank account for operating expenses; (3) $8950.64 Greiner removed from a VendPrint bank account for operating expenses; and (4) $138,045.69, which the court found

---

[6] Greiner testified he began operating the business formerly performed by PSI and VendPrint through SirkTech in April 2011. For purposes of this decision we will assume this date was April 1, 2011.

[7] We additionally note this amount does not represent accounts receivable. The exhibit the court relied upon states it is a list of sales from January through September 2010. There is no indication in the record the corporations were not paid for those sales prior to October 1, 2010.

represented PSI and VendPrint sales between October 1, 2010, and March 31, 2011.

**B.** We turn to the issue of Greiner's decision to conduct the business of PSI and VendPrint through his own corporation, SirkTech. A person "holding a corporate fiduciary position may not appropriate for himself a business opportunity which in fairness belongs to the corporation." *Rowen*, 282 N.W.2d at 660. "Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests." *Ontjes v. MacNider*, 5 N.W.2d 860, 868 (Iowa 1942) (citation omitted). A director or officer of a corporation should not acquire an interest adverse to the corporation. *Schildberg Rock Prods. Co. v. Brooks*, 140 N.W.2d 132, 137 (Iowa 1966).

By conducting the business of PSI and VendPrint through SirkTech, Greiner took from PSI and VendPrint the corporate opportunities—the sales—which should have belonged to those corporations and gave them to his own corporation. At that point, Greiner used his position as a director and officer of PSI and VendPrint to further his own private interests. The interests of SirkTech were adverse to PSI and VendPrint because SirkTech captured the profits and losses which should have belonged to PSI and VendPrint.

We conclude Greiner did not act in good faith or in the best interests of the corporations. *See* Iowa Code § 490.830(1). We determine he is liable to PSI and VendPrint for damages arising during the time period from April 1, 2011, when he started operating the business of the corporations through SirkTech, until August 9, 2012, when the corporations were administratively dissolved.

**C.** Finally, Tope claimed Greiner did not act in the best interests of PSI when he agreed to settle the Felderman lawsuit for $15,000 on July 3, 2012. The judgment was for $28,690.76, plus attorney fees of $63,281.89 and interest. Greiner testified Felderman did not have the ability to pay the total amount he owed and Greiner relied on legal advice to accept the settlement offer of $15,000. Greiner stated not only was there a settlement on the amount of the judgment, but the attorney agreed to accept a settlement in legal fees. From the $15,000 settlement, $14,000 went to legal fees and PSI received $1000.

The actions of a director or officer may be protected by the business judgment rule. *Hanrahan v. Kruidenier*, 473 N.W.2d 184, 186 (Iowa 1991). "The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Whalen v. Connelly*, 593 N.W.2d 147, 154 (Iowa 1999) (citation omitted).

The business judgment rule applies "only where a director is shown not to have a self interest in the transaction at issue." *Cookies*, 430 N.W.2d at 453. Greiner owned fifty percent of the shares in PSI. It was in the best interests of PSI and Greiner's own interests to get as much from the Felderman lawsuit as possible. Tope has not shown Greiner had an incentive to settle the case for a lesser amount.

We conclude Greiner's decision to accept the settlement is protected by the business judgment rule. The decision did not involve self-interest. Greiner

testified he considered the situation, including Felderman's ability to pay and the advice of counsel, and decided to accept the settlement. The evidence shows Greiner acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Whalen*, 593 N.W.2d at 154. We conclude PSI is not entitled to relief for Greiner's decision to settle the Felderman lawsuit for $15,000.

## IV.     Compensatory Damages

The purpose of a shareholder derivative action is to redress the company's loss. *Cookies*, 430 N.W.2d at 455. "We agree all profits must be accounted for and all benefit to the individuals must be returned. But there is nothing equitable about denying defendants the benefit of the actual and reasonable cost of producing that profit." *Rowen*, 282 N.W.2d at 657. "[A] money award in a derivative suit is more appropriately referred to as a judgment for restitution rather than as one for damages." *Id.* at 656.

Income which should have been paid into PSI and VendPrint was instead captured by SirkTech. At the same time, SirkTech paid the expenses which would have otherwise been the responsibility of PSI and VendPrint. We conclude PSI and VendPrint are entitled to compensatory damages for the net profits received by SirkTech which should have gone to PSI and VendPrint for the time period from April 1, 2011, until the date the corporations were administratively dissolved, August 9, 2012.

The district court determined the lost sales of PSI and VendPrint during this period were valued at $412,685.00. A review of the record, however, does

not support such a finding over this time period.  Exhibit 11 shows SirkTech had sales of $190,701 from April 1, 2011, to December 31, 2011.  Exhibit 12 shows SirkTech's sales from January 1, 2012, through December 31, 2012, were $228,667.  PSI and VendPrint are only entitled to damages during the time they were in existence, and so should not be able to recover for sales SirkTech made after they were administratively dissolved on August 9, 2012.  We are unable to determine from the present record the amount of sales lost to PSI and VendPrint during the relevant time period.

The district court found PSI and VendPrint had operating costs of $115,000 per year.  During the hearing, Tope testified he looked at Exhibit 7, SirkTech's profit and loss statement for January through December 2013, showing total expenses of $189,739.61, and Exhibit 8, SirkTech's profits and losses from January through July 2014, showing total expenses of $95,902.83.  Tope stated, "I can see expenses that are not needed and others that could be cut, reduced," and concluded the expenses should have been $115,000 per year.  We determine the actual expenses of SirkTech for April 1, 2011, through August 9, 2012, should be used to determine the company's net profits during that period of time.  Tope's testimony about the company's expenses in 2013 and 2014 is not necessarily relevant.

Because we are unable to determine from the current record SirkTech's profits and losses for the relevant time period, we determine the issue should be remanded to the district court for specific findings on this issue.  In addition, the

court's findings should specify the net profits which would have been attributable to PSI and those which would have attributable to VendPrint.

## V.    Punitive Damages

In a shareholder derivative action, "an equity court may, in its discretion, award exemplary damages upon a showing that some legally protected right has been invaded, such as an intentional act of fraud or other wrongful conduct." *Holden v. Constr. Mach. Co.*, 202 N.W.2d 348, 359 (Iowa 1972).  An intentional act of fraud "includes all acts, omissions and concealments which involve a breach of either legal or equitable duties, trust or confidence, justly reposed, which are injurious to another or by which an undue or unconscionable advantage is taken."  *Id.*; *see also Sauer v. Moffitt*, 363 N.W.2d 269, 274 (Iowa Ct. App. 1984).

The district court assessed punitive damages of $275,365.34 against Greiner.  The award was based on the court's finding compensatory damages were $682,223.20.  Because we are remanding for a new determination of compensatory damages, we conclude the issue of punitive damages should be revisited as well.  Any award of punitive damages should be based solely on Greiner's actions between April 1, 2011, and August 9, 2012.

## VI.    Equitable Relief

The district court has the power to fashion equitable relief in a shareholder derivative action.  *Sauer*, 363 N.W.2d at 275.  The Iowa Supreme Court has stated, "Wherever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity

will devise a remedy to meet the situation, though no similar relief has been given

before." *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517, 527 (Iowa 1974).

The district court granted the following equitable relief in this case:

(1) Defendants shall provide Plaintiff with current, functioning source code/software to all products; (2) Defendants shall provide Plaintiff with contact information for all programmers who had access to source code for past seven years; (3) Defendants shall cease using the VendPrint/Peripheral Solutions website and give Plaintiff access to it for use in restarting VendPrint and Peripheral Solutions; (4) Defendants shall cease using the VendPrint/Peripheral Solutions telephone number and give Plaintiff access to it for use in restarting VendPrint and Peripheral Solutions; (5) Defendant Greiner shall cease using the names of VendPrint and Peripheral Solutions for purposes of generating business for SirkTech; (6) Defendant Greiner shall cease diverting the customers of VendPrint and Peripheral Solutions to SirkTech; (7) Defendants shall provide Plaintiff all prospective customer names and contact information for current and prospective customers for VendPrint and Peripheral Solutions, including end users and resellers; (8) Defendant shall provide Plaintiff the database (ACT) for VP; and (9) Defendants shall provide Plaintiff the four-channel fax card used to send flyers.

In his rule 1.904(2) motion, Greiner asked for clarification of item six, asking to have the ruling provide, "Defendant Greiner shall cease diverting the customers of VendPrint and Peripheral Solutions to SirkTech through use of the website or phone number previously used by VendPrint or Peripheral Solutions or through use of the names VendPrint or Peripheral Solutions." Greiner stated the order should not prohibit him from working with former or current customers of PSI and VendPrint if, in the future, he was no longer a director or officer of the corporations and opened a new and different business.

Greiner relies upon *Midwest Janitorial Supply v. Greenwood*, 629 N.W.2d 371, 376 (Iowa 2001), which found a director's mere preparation to form a

competing business organization "is not actionable unless it is shown that something in the preparation to compete produced a discreet harm to the former business beyond the eventual competition that results from the preparation." The defendant there engaged in preparations to compete against the plaintiff while still a director and officer of the plaintiff corporation. *Midwest Janitorial Supply*, 629 N.W.2d at 376. A director or officer should not compete with a corporation while still acting as a director or officer for the corporation, but may engage in competition once the director or officer has terminated the relationship with the corporation. *See id.*

We conclude the paragraph concerning equitable relief should be amended to provide in item six, "Defendant Greiner shall cease diverting the customers of VendPrint and Peripheral Solutions to SirkTech through use of the website or phone number previously used by VendPrint or Peripheral Solutions or through use of the names VendPrint or Peripheral Solutions."

## VII.    Conclusions

We find the nominal plaintiff, Tope, does not have clean hands, and PSI and VendPrint are not entitled to relief for the time period from October 1, 2010, when Greiner moved the business, until April 1, 2011, when Greiner started operating the businesses through SirkTech, and reverse the district court's grant of damages on this ground. We determine Greiner is liable to PSI and VendPrint for damages arising during the time period from April 1, 2011, when he started operating the business of the corporations through SirkTech, until August 9, 2012, when the corporations were administratively dissolved. We conclude

Greiner's decision to accept the Felderman settlement is protected by the business judgment rule and reverse the district court's award of damages on this ground as well. We determine the case must be remanded to the district court for a calculation of compensatory damages for the time period of April 1, 2011, until August 9, 2012, for each corporation. Because we are remanding on the matter of compensatory damages, we are also remanding on the issue of punitive damages. We affirm the award of equitable relief, as modified in this opinion.

**AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED.**