**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A1609. LEGACY ACADEMY, INC. v. PACU ENTERPRISES,   TB-066
  INC.

BROWN, Judge.

Legacy Academy, Inc., a franchisor of childcare centers, sued one of its franchisees, PACU Enterprises, Inc., and PACU member, Tim Paulus, alleging breach of contract and seeking damages for lost royalties, lost advertising/marketing fees, and attorney fees. Following a trial, the jury returned a verdict in favor of Legacy on its claim for lost royalties in the amount of $270,000, and attorney fees in the amount of $5,000, but awarded nothing for advertising/marketing fees. The trial court entered a final judgment in favor of Legacy for $275,000. Legacy appeals from the final judgment, arguing that the trial court erred in denying its motion for directed verdict on its claim for advertising/marketing fees. We agree.

"A motion for directed verdict is to be granted only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." (Citations and punctuation omitted.) *Coastal Supply Co. v. White*, 183 Ga. App. 54 (357 SE2d 875) (1987). See OCGA § 9-11-50 (a). "On appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict." (Citation omitted.) *Legacy Academy v. Doles-Smith Enterprises*, 337 Ga. App. 575, 576 (789 SE2d 194) (2016). "However, we review questions of law de novo." *Atlanta Emergency Svcs. v. Clark*, 328 Ga. App. 9, 11 (1) (761 SE2d 437) (2014). See also *Infinity Gen. Ins. Co. v. Lipton*, 308 Ga. App. 497, 48 (2) (707 SE2d 885) (2011) (" the construction, interpretation and legal effect of a contract are issues of law which are subject to de novo review") (punctuation and footnote omitted). So viewed, the evidence adduced at trial shows that on October 2, 2001, PACU and Legacy entered into a franchise agreement for PACU to establish and operate a daycare center in Lawrenceville. In pertinent part, the agreement provided that PACU pay Legacy five percent of its gross monthly revenue as

2

royalties, and one percent of its gross monthly revenue as advertising/marketing fees. The franchise agreement was to last 25 years.

PACU began operating its daycare center in June 2002. Legacy waived the fees for the first six months of operation, and PACU paid the royalties and advertising/marketing fees through December 2010. In December 2010, PACU repudiated the franchise agreement and stopped operating as a Legacy daycare. Paulus and his partner, Mark Gifford, admitted that PACU stopped paying royalties and advertising/marketing fees after December 2010. Gifford testified as to PACU's gross yearly revenue as follows: $925,268.91 in 2011; $970,903.49 in 2012; $906,516.91 in 2013; $857,599.30 in 2014; $931,988.64 in 2015; and $526,411.18 for January 2016 through the end of July 2016.

Legacy filed this action in December 2010, seeking accrued and unaccrued royalty and advertising/marketing fees, and a jury trial was held in 2016.[1] At the close of the evidence, Legacy moved for a directed verdict, contending, inter alia, that based on this Court's decisions in *Doles-Smith*, supra, and *Legacy Academy v. JLK, Inc.*, 330 Ga. App. 397 (765 SE2d 472) (2014), it was entitled to judgment as to

---

[1] Legacy sought lost royalties and advertising fees from January 2011, through July 2016, right before trial.

liability and damages related to the advertising fees. Legacy also moved for a directed verdict as to PACU's defense of mitigation of damages, arguing that PACU made "no showing that [Legacy] did anything to fail to mitigate [its] damages." Responding to this latter claim, PACU argued that "a reasonable fact finder could find that Legacy failed to take reasonable steps to mitigate its lost stream of advertising revenue by purchasing the location and operating it, which would have allowed them to replenish the lost revenue stream or by installing a new franchisee in what was formerly protected territory." The trial court denied Legacy's motion, and submitted all claims to the jury, which returned a verdict in favor of Legacy and awarded royalty fees in the amount of $270,000, and attorney fees in the amount of $5,000. It awarded no advertising/marketing fees.

Relying on this Court's decisions in *Doles-Smith*, supra, and *JLK*, supra, Legacy contends in its sole enumeration of error that the trial court erred in denying its motion for a directed verdict on its claim for advertising/marketing fees for January 2011 through July 2016. We agree.

The franchise agreement provides that franchisees must pay one percent of their gross monthly revenue to Legacy as an advertising/marketing fee and requires Legacy "to expend all, or any portion, of the Fund, in any year, for advertising,

4

marketing or promotional programs or activities[.]" Section 9.1 of the agreement specifically provides:

> Franchisee understands and acknowledges that the Fund is intended to maximize general public recognition and acceptance of the Licensed Marks for the benefit of the Legacy Academy System, as a whole, and that the Franchisor or its designee undertake no obligation in administering the Fund to insure that any particular franchise owner benefits directly or pro rata from amounts contributed by such franchisee to the Fund.

At trial, Legacy's owner testified that the advertising/marketing fee is used for advertising and marketing of the Legacy brand, and that 100 percent of the fee is used on advertising, including marketing materials, production, a marketing person, and other costs associated with advertising.[2]

In *JLK* and *Doles-Smith*, we considered the same advertising/marketing fee provisions in Legacy's franchise agreements at issue here and found that Legacy was entitled to recover advertising/marketing fees from the respective franchisees, explaining that "the purpose and expectation of the advertising fee was not an immediate profit to Legacy, but rather an overall enhancement of the Legacy brand

---

[2] We note that Legacy's owner testified almost identically in *JLK*. 330 Ga. App. at 405 (3).

per se." *JLK*, 330 Ga. App. at 405 (3); *Doles-Smith*, 337 Ga. App. at 587 (5). Citing

to Williston on Contracts, § 64:2 (4th ed., 2014), we reasoned that

> the best measure of the value of the broken promise is the value assigned
> to it by the parties themselves. Basing damages on an amount equal to
> what the promisor and especially, the promisee, believed the promise to
> be worth, reflects better than any other measure the loss caused by the
> breach. Damages based on protection of the promisee's expectation
> interest are not only the most accurate means of measuring loss
> following a breach of contract but also the most typical measure of
> recovery granted.

(Punctuation omitted.) *JLK*, 330 Ga. App. at 405-406 (3). In *JLK*, we concluded that

"Legacy was entitled to receive the benefit of the bargain it made as to the advertising

fees[,]" and reversed the trial court's denial in a bench trial of Legacy's claim for

advertising/marketing fees both before and after the contract's termination, and

"*remand[ed] the case for proceedings not inconsistent with [our] opinion.*"

(Emphasis supplied.) Id. at 406 (3). We concluded similarly in *Doles-Smith*, where

we affirmed the trial court's denial of the franchisee's motions for directed verdict

and j.n.o.v. on Legacy's counterclaim to recover advertising/marketing fees, holding

that "Legacy was not required to calculate how much the loss of the fees diminished

its brand, but instead could rely on the value assigned to the fees by the parties

6

themselves – one percent of [the franchisee's] gross monthly revenue – as a basis for its damages." 337 Ga. App. at 587-588 (5).

Although not explicitly stated in those cases, it is clear that PACU's obligation under the franchise agreement to pay the advertising fees was fixed and absolute, providing that PACU must pay one percent of its gross monthly revenue to Legacy as an advertising/marketing fee. PACU did not file an appellate brief. But, as noted previously, its sole argument in response to Legacy's motion for directed verdict on its claim for advertising fees was that Legacy failed to mitigate its damages.[3]

---

[3] During the trial, counsel for PACU stated several times that it was asserting the defense of mitigation under two theories: (1) Legacy could have exercised its option to purchase the premises, and (2) Legacy could have installed a new franchise in the territory. The trial court rejected PACU's first theory, ruling that the second theory was the only viable defense under the facts presented. We note that PACU asserted only the affirmative defense of failure to mitigate damages; it did not assert other affirmative defenses such as waiver or estoppel. Nonetheless, we point out that the franchise agreement included a non-waiver clause, which provided as follows:

No failure of Franchisor to exercise any power of reserved to it by this Agreement and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Franchisor's right to demand exact compliance with any of the terms herein. A waiver or approval of any particular default by Franchisee or acceptance by Franchisor of any payments due hereunder shall not be considered a waiver or approval by Franchisor of any preceding or subsequent breach or default by

7

Specifically, PACU argued that "a reasonable fact finder could find that Legacy failed to take reasonable steps to mitigate its lost stream of advertising revenue by purchasing the location and operating it, which would have allowed them to replenish the lost revenue stream or by installing a new franchisee in what was formerly protected territory."[4] However, as has been repeatedly held, "[t]he rule requiring a party to mitigate damages is not applicable where there is an absolute promise to pay." *Royal Crown Cos. v. McMahon*, 183 Ga. App. 543, 545 (2) (359 SE2d 379) (1987) (plaintiff's right to severance pay per golden parachute agreement was absolute). See also *McLane v. Atlanta Mkt. Center Mgmt.*, 225 Ga. App. 818, 824 (1) (486 SE2d 30) (1997) (licensed real estate agent under no duty to mitigate damages where express terms of employment contract were fixed and absolute, allowing her $1.50 for every square foot leased by her primary client), reversed on other grounds by *Atlanta Mkt. Center Mgmt. v. McLane*, 269 Ga. 604 (503 SE2d 278) (1998). Here, PACU's obligation to pay the advertising fees was an absolute promise to pay to

Franchisee of any term, covenant or condition of this agreement.

[4] In closing arguments, PACU argued that once Legacy discovered that PACU had repudiated the agreement in 2010, it could have opened another franchise in the same location. The trial court also charged the jury that "[w]hen by breach of contract one is injured, one is bound to lessen the damages so far as practicable by the use of ordinary care."

8

which the defense of mitigation of damages does not apply. It follows that the trial court erred in not granting a directed verdict in Legacy's favor on (1) PACU's affirmative defense of mitigation and (2) the amount of the damages for advertising fees from January 2011, through July 2016. See *Ameris Bank v. Alliance Investment & Mgmt. Co.*, 321 Ga. App. 228, 234-235 (3) (b) (739 SE2d 481) (2013). Cf. *Teklewold v. Taylor*, 271 Ga. App. 664, 667 (1) (610 SE2d 617) (2005) (explaining that a directed verdict on the amount of liquidated damages is proper where the amount recoverable appears from the undisputed evidence to be certain; but finding that the trial court improperly directed a verdict on damages for lost wages and medical expenses which were anything but certain). We reverse the denial of Legacy's motion for directed verdict, and direct the trial court to enter judgment in favor of Legacy in the amount of the advertising/marketing fees in addition to the amount previously awarded by the jury for royalty fees and attorney fees.

*Judgment reversed and case remanded with direction. Miller, P. J., concurs. Goss, J.,dissents.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A18A1609. LEGACY ACADEMY, INC. v. PACU ENTERPRISES, INC.

Goss, Judge, dissenting.

I do not agree with the majority's conclusion that the trial court erred when it allowed Legacy's claim for advertising fees to go to the jury. Both of the cases on which the majority relies concluded that a question of fact remained on the issue. See Legacy Academy v. JLK, Inc., 330 Ga. App. 397, 405-406 (3) (765 SE2d 472) (2014) (reversing a trial court's determination that Legacy could not recover advertising fees and remanding for further proceedings); Legacy Academy v. Doles-Smith Enterprises, 337 Ga. App. 575, 587-588 (5) (789 SE2d 194) (2016) (affirming the denial of plaintiffs' motions for directed verdict and j.n.o.v. on Legacy's counterclaim for advertising fees). I also agree with the trial court's conclusion that questions of

10

fact remained on PACU's affirmative defenses of prior material breach and failure to mitigate damages. For both of these reasons, I respectfully dissent.